OCEAN ACCIDENT & GUARANTEE COMPANY CORPORATION, LIMITED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 12348.  Promulgated October 16, 1928.

*Lee J. Wolfe, C. P. A., Ewing Everett, Esq., Stuart Chevalier, Esq.,* and *F. O. Graves, Esq.,* for the petitioner.
*J. F. Greaney, Esq.,* for the respondent.

OPINION.

ARUNDELL: The respondent has determined deficiencies for the years 1918 and 1920 and an overassessment for the year 1919. Inasmuch as the petitioner contends that it had a net loss for both 1918 and 1919 which would result in the alleged 1919 net loss being applied against 1920 income, we have jurisdiction to examine the facts with respect to the year 1919 in so far as they may affect taxes for

1918 and 1920. Section 274(g) of the Revenue Act of 1926. The losses paid by petitioner in the several years involved and the additions required by law to be made to reserve funds have been allowed by the respondent as deductions and are not in controversy here.

The claim of petitioner is that it is entitled to deductions of additional amounts which were estimated by its claim department upon claims received as representing petitioner's probable liability on policies it had written. It is the contention of petitioner that these amounts are allowable under section 234(a)(10) of the Revenue Act of 1918, which allows as deductions "the sums other than dividends paid within the taxable year on policy and annuity contracts." The amounts claimed as deductions were not actually paid within the taxable years, but petitioner says that its method of setting up the amounts brings it within section 200, which provides that for the purposes of deductions and credits the term "paid" means "paid or accrued" or "paid or incurred."

If petitioner is entitled to deduct by way of an accrual the items sought to be deducted, it is clear that it must establish that its books were kept on a basis other than that of cash receipts and disbursements. It is well to have before us in reaching a conclusion on this point the testimony of petitioner's comptroller, which, in so far as it is material, reads as follows:

Direct Examination:

Q. During the years 1918, 1919, and 1920, do you know whether the books of the petitioner and its records were kept on an accrual basis?

* * * * * * *

A. The books of the petitioner and its records were kept on an accrual basis.

Cross Examination:

Q. But you made no entry on your books of account with respect to these reserves.

A. No entry on the books of account was made as to the reserves. The books of account show cash income and cash disbursements.

Q. Now, you have just made a statment in reply to a question that the books of account were kept on an accrual basis, have you not?

A. I did not. I said that the records were kept on an accrual basis. I did not say the books of account.

Q. Well, how were the books of account kept?

A. The books of account reflect the cash income and cash disbursements.

Q. Then, they were kept on a cash basis?

A. Yes. Now, you are talking about reserves still, aren't you?

Q. I am talking about the books of account.

A. All right.

* * * * * * *

By the Member:

Q. Are any items accrued on your books other than these claims that are here?

A. No; no reserves for items are accrued on our books of account; that is, I mean on our general ledger. Of course, when I say "accrued" I mean subjects of reserves and liabilities.

Q. Well, are your books, other than in connection with this reserve, kept on the cash basis?

A. They are kept on the cash basis.

Q. And this particular item is the only item that is on the accrual basis, the estimate of the claims?

A. None of your estimates—anything that is not reduced to a known factor would not be put on your general books. When it comes to taxes, the best you could do would be to estimate your liability for taxes. Such a liability would not go on the books. Do you wish me to explain the purpose of the annual statement?

From this testimony one thing is clear—that petitioner's books of account, as its witness understood that term, were kept on a cash receipts and disbursements basis. The "records" which, according to the testimony, were kept on an accrual basis, consist of the books of account and the summary of the estimates to cover petitioner's probable liability in cases of reported accidents and injuries. We seriously doubt whether these estimates can be said to be a part of petitioner's accounting records for the purpose of determining income, the evidence being to the effect that the estimates were made and summarized for statistical purposes, for the purpose of determining the financial condition of the company, and to determine premium rates. Neither the estimates on individual cases nor the summaries were ever entered on the ledger or other books of account. It may well be that the scope of petitioner's business required the maintenance of records of the different phases of its business for various purposes, for example, such as making reports to the States in which incorporated and in which it operates, for advertising purposes, for the information of its solicitors; but it does not follow that all such records are parts of the accounting system maintained for the purpose of determining income.

Even if we were able to find that the estimates of losses as summarized constituted a part of petitioner's accounting system, this would still be short of establishing that the accrual system prevailed and that accruals are necessary in order to reflect income. These items reflect claimed accrued losses in respect of only two lines of insurance written by petitioner. Whether it accrued unpaid losses for other lines, and whether it accrued items of expense and income is not shown, nor was any attempt made to put in evidence on this point. The only conclusion we can reach from the evidence is that the books of account were kept on a cash receipts and disbursements basis. Having reached the conclusion that we have, it becomes unnecessary to decide whether or not, if other methods of keeping its books of account had been followed, estimates or claimed losses might be deducted. No testimony was offered as to the history of individual claims; whether in fact petitioner conceded its liability in any specific case, and which claims, if any, it in fact was ever required to pay.

As to the taxes imposed by and paid to the Government of Great Britain and Ireland, the claim is that a part thereof represented taxes on income from sources within the United States and that such part is an allowable deduction under certain of the provisions of section 234 of the Revenue Act of 1918. These provisions read as follows:

SEC. 234. (a) (3) Taxes paid or accrued within the taxable year imposed * * * (e) in the case of a foreign corporation, by the authority of any foreign country (*except income, war-profits and excess-profits taxes*, and taxes assessed against local benefits of a kind tending to increase the value of the property assessed), upon the property or business: * * *

SEC. 234. (b) In the case of a foreign corporation *the deductions allowed* in subdivision (a) * * * shall be allowed only if and to the extent that they are connected with income arising from a source within the United States; * * * (Italics ours.)

It is obvious that the income taxes paid to the Government of Great Britain and Ireland are not deductible under section 234 (a) (3); they are expressly excepted from the deductible taxes. Subdivision (b) of section 234 refers to the *deductions allowed* in subdivision (a), and as the taxes here involved are not allowed as deductions in subdivision (a), the provisions of subdivision (b) are not applicable. Petitioner argues that the two subdivisions when read together must be construed to provide that foreign income and profits taxes are to be apportioned on the percentage of income derived from sources within the United States to the total income and allowed as a deduction; that otherwise there would be no meaning to subdivision (b) because we can not have a tax " connected with income " which is not an income tax. This is not necessarily so. It seems to us that the corporation excise tax imposed by the Act of 1909 is a good illustration of a tax connected with income but which nevertheless was not an income tax.

That the interest received by petitioner on bonds of foreign governments was improperly included in income is now conceded by the respondent in view of the decisions in *Standard Marine Insurance Co., Ltd.*, 4 B. T. A. 853, and *Marine Insurance Co., Ltd.*, 4 B. T. A. 867. These amounts are: $15,470.83 for 1918; $19,391.67 for 1919; and $15,134.77 for 1920. In so far as the deficiencies result from the inclusion of these amounts in income, they will be revised under Rule 50. In other respects the respondent's determinations for the years 1919 and 1920 are approved and the case in so far as those years are concerned will be closed under the Rule 50 settlement. As to 1918 the case will be retained on the docket for further proceedings under Rule 62.

*Judgment will be entered under Rule 50.*